## MASONIC FRATERNITY TEMPLE ASS'N v. MURPHY IRON WORKS.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1914.)

No. 2039.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SELF-FEEDING FURNACE.

The Murphy patent, No. 587,678, for a self-feeding furnace, claims 14 and 17, construed and held not anticipated, valid, and infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Suit in equity by the Murphy Iron Works against the Masonic Fraternity Temple Association. Decree for complainant, and defendant appeals. Affirmed.

John G. Elliott, of Chicago, Ill., for appellant.

Walter M. Fuller and Charles C. Linthicum, both of Chicago, Ill., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge. The District Court adjudged appellant to have been guilty of infringing claims 14 and 17 of patent No.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

587,678 granted to Thomas Murphy on August 3, 1897, for improvements in self-feeding furnaces.   The claims in suit are as follows, viz.:

"In a self-feeding furnace, the combination with the fuel-magazines in the side walls, and the coal-pushers for feeding the fuel, of the coking-plates constructed in independent sections and forming the top of an air-flue extending back of the fuel-magazine and into the air-feeding devices of the furnace."

"In a self-feeding furnace inclosed in brick walls and having side-feeding fuel-magazines and a V-shaped grate between the same, of fuel-magazines supported longitudinally in the sides of the furnace free and clear."

"My invention," says the patentee, "relates more particularly to steam-boilers and other furnaces of the self-feeding smokeless type, in which the grate-bars are arranged either in two rows on the opposite sides or in front of the furnace-chamber and incline downwardly toward the center or toward the rear, the fuel being introduced at the top and fed down toward the middle or rear, in which there is a device for mechanically removing the clinkers."

The specification further states:

"The object of my invention is to improve the mechanical devices for feeding the fuel * * * and further to safeguard against the destructive influence of the high heat, which is the most difficult factor to deal with in this class of furnaces."

Patentee specifically claims he has made provision to lessen the liability of damage to exposed parts and for facilitating the making of repairs, especially of the so-called coking-plate.

The following cuts, being figure 4 and a portion of figure 1 of the drawings of the patent, suffice to show the parts here involved:

*A* represents a steam generator, *B* a combustion chamber, and *C* the fire arch of the combustion chamber.   *D* is the fuel magazine located in the sides of the combustion chamber having discharge opening *E* and supply chutes *F*.   *G* are the coal-pushers actuated by the rock-shafts *H* to feed the coal into the grate.   *J* represents the air-ducts supplying heated air through the passage *K* to the grate.   *L* and *M* are the grate-bars, and *Q* is the clinker bar, whereby clinkers are crushed.   *R* is a sectional wedge-shaped compensating plate against which the stationary grate bars abut.   $R^1$ is a lip extending from plate *R* over the top of the grate bars into the fire chamber to prevent fuel falling between the grate bars, and allowing free passage of the air to keep plate *R* cool, while at the same time it forms a removable part of the so-called coking-plate *S*, which is also made in sections and which extends a short distance into the fire-chamber.   $U^3$ is an air-chamber communicating with air-chamber $U^4$ formed at the rear

end of the magazine and leading into the air-flue $J$, from which it is fed through the passage $K$ into the furnace. By this arrangement, the patentee claims a current of air will be induced to flow through the air-chambers $U^3$ and $U^4$ and keep the parts cool, while at the same time heated air is introduced into the furnace. By supporting the fuel magazines longitudinally in the sides of the furnace and dispensing with brick work underneath, and also by means of the circulation of the air through $U^3$ under the sectional coking-plate, it is claimed that the destructive effect of the heat upon the coking-plate and other exposed parts is lessened. The so-called coking-plate forms the floor of the fuel magazine and the top of the air flue $U^3$. When the fuel fails to feed down freely, or when for other causes the plate is bare or otherwise exposed to great temperature, the heat is apt to warp it, causing trouble to the movement of the coal-pushers, and otherwise injuring the action of the air and fuel supply. By reason of the removal of the brick foundation of the magazine, and the sectional construction of the coking-plate, access for purposes of repairs to said plate is readily attained and room is provided for expansion of the different parts thereof. The coking-plate, so-called, of the prior art was in one piece and, as it claimed, was easily warped and difficult to get at for purposes of repairs, and removal.

From the foregoing figures and description the claims will be readily understood.

While the advance in the furnace art set out in the claims is of a minor character, it must be remembered that the art is old and crowded; that it has been built up for many years, by similarly simple advances, until at the time the patent was granted there remained little room for basic invention, and that consequently invention has been practically limited to slight improvements. The addition to the effectiveness of the furnace covered by the patent, if new, is entitled to the protection of the statutes. To support the contention that the matters covered by the patent are not new, appellant cites numerous patents in the prior art hereinafter mentioned. Appellee was granted several patents for improvements in furnaces, which are cited as part of that prior art. Of these may be mentioned patents Nos. 316,641 and 316,642, both granted on April 28, 1885. Neither of these show the sectional coking-plate, the air flue under the plate so arranged as to effectively cool the plate while conducting the air to the rear of the furnace, or the opening obtained by supporting the fuel magazines in the side walls of the furnace and thereby doing away with the brick foundation.

It is appellant's contention that the burning out of the rear end of the magazine and arch plate, in connection with the 1885 patents, led Murphy in the claims in suit to connect the rear end of his circulating air dust-pit with the rear end of the chambers $F$ and $P$ of said prior Murphy patents, in order to more efficiently introduce air through the dust-pit and rear end uptake flue. While this end was attained, the patent had for its objective as well the protection and repairing facilities of the so-called coking-plate sections, as clearly appears from the claims in suit.

Patent No. 48,247, granted to J. Zeh June 13, 1865, for a furnace grate bar, shows a plate made in sections used as a substitute for the front fire bars. "In order to prevent this plate from becoming warped, it may be made in several pieces to allow for expansion and contraction," says the specification.

This device lacks the side-feed, the stationary coking-plate, the air-flue under a coking-plate, and the magazine supported in the side walls, whereby the space underneath the magazine is left open. While, in some sense, a base or coking-plate, it is not properly the bottom of the fuel magazine. It makes no provision for conducting the air to the rear part of the furnace, and is therefore clearly not the combination of the claims in suit.

The British patent, No. 6,466, granted to Haddan May 27, 1885, for a front-feed furnace, has no sectional coking-plate, nor is its plate the top wall of an air flue extending back into the air feeding devices of the furnace. Nor has it an air flue beneath it. The furnace has no V-shaped grate. Nor has it a side-feed. Whatever air it supplies is fed from above. The differences of the two are too many to permit its consideration as an anticipating device.

The British patent to Marchant and Parker, No. 601, granted March 4, 1867, for generating, superheating, and steam, etc., is cited to show a hollow metal dead plate through which water is made to circulate to prevent injury to the rollers and cams. We do not deem it a pertinent citation.

The Wilkinson patent, No. 480,538, granted August 9, 1892, for a furnace grate, is a front-feed device in which there is no so-called coking-plate. The grate extends into the fuel magazine. The furnace has no air flue conducting the air into the back thereof. Nor has it fuel magazines in its side walls, or a V-shaped grate.

Richards patent, No. 515,612, granted February 27, 1894, for a furnace, calls for a device in which the process called for may be carried out without a traveling grate, and for one which provides for the pre-heating of the fuel and for feeding the same over the grate or furnace floor. It is not a self-feeding furnace. It has no sectional coking-plate or air flue thereunder. Its magazine is not supported in the side walls of the furnace, nor has it any coking-plate forming the top wall of a coal-intake flue leading into the air feeding devices of the furnace.

Appellant sets up and discusses by way of defense a number of other patents, viz.: Richards patent, No. 535,413, granted March 12, 1895, for process of and apparatus for burning fuel; Sanderson patent, No. 573,298, granted December 15, 1896, for furnace grate and automatic stoker; Vicars patent, No. 296,301, granted April 1, 1884, for apparatus for feeding fuel to and in furnaces; Gregory patent, No. 228,061, granted May 25, 1880, for a furnace; Krudewig patent, No. 305,457, granted September 23, 1884, for a smoke and gas consuming furnace; Dunn patent, No. 561,097, granted June 2, 1896, for a furnace; and patent No. 395,739, granted to Campbell January 8, 1889, for a device for feeding fuel, together with a number of other patents not discussed by either counsel.

On examination, we are satisfied that none of the patents cited anticipates the combination in suit. We therefore hold both of the claims to be new, for anything that is shown by prior patents. Neither do we consider the alleged prior use in the construction of the furnaces at the John Hauck Brewing Company plant at Cincinnati, Ohio, to have been an anticipation of claims 14 and 17 or either of them. That work closely resembled Murphy's prior devices. It had air from the dust chamber and also air admitted through an opening in the front plate passing into the chamber at the rear of the furnace, but lacked the air-flue under the sectional coking-plate, as well as the sectional plate itself. The magazine rested on brick foundation walls instead of in the side walls of the furnace. The coking-plate was inaccessible for purposes of removal and repairs, and was of single thickness. That furnace cannot be considered as anticipating the combination of either claim 14 or claim 17.

We are not impressed with the appellant's claim of aggregation as applied to claims 14 and 17. In our judgment the parts co-operate to produce an improved furnace and are therefore properly treated as a combination, the utility of which appellant will not be heard to deny.

From the record it appears that Orville D. Cotton, practically constituting the appellant company, was formerly in the employ of Thomas Murphy, the patentee of the claims in suit; that appellee is the owner of the patent sued on, by assignment; that Cotton was familiar with appellee's patent and the device of the claims in suit.

We are unable to find any substantial difference between appellee's furnace and the alleged infringing device. The whole prior art was open to it. Why should it be permitted to appropriate appellee's device?

The decree of the District Court is affirmed.